THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAMON LANZA-VAZQUEZ,<br><br>Petittioner<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **Civil No. 17-1805 (ADC)**<br>[Related to Crim. No. 07-547-22 (ADC)] |

**OPINION AND ORDER**

Pending before the Court is Rafael Lanza-Vázquez's ("petitioner" or "Lanza") motion for *habeas* relief. **ECF Nos. 1, 4**. On April 9, 2020, the government opposed. **ECF No. 15**. For the reasons explained below, petitioner's motion is **DENIED,** and his claims are **DISMISSED WITH PREJUDICE**.

**I.     Background**

The facts of this case were laid out by the First Circuit Court of Appeals in *United States v. Lanza*, 799 F.3d 134 (1st Cir. 2015). This Court recites the facts that are relevant to a better understanding of the factual and procedural background of this case, which deals with a drug trafficking operation at the Jardines de Sellés Housing Project in San Juan, Puerto Rico ("Sellés"). On January 26, 2000, the leader of that operation, Luis Daniel Rivera, was murdered and Alberto Carrillo-Morales ("Alfalfa") replaced Rivera as leader. Alfalfa later took over the operation at

the El Prado Housing Project, Las Flores - a housing project in the nearby municipality of Aibonito -, and the Liborio Ortiz Housing Project. Lanza joined Alfalfa's operation after leaving a rival organization, serving as a seller, enforcer, and at times, a runner. His role later became more substantial, as he was invited to Alfalfa's weekly meetings and became the owner of the "green-capped" crack sold at El Prado. He was spotted doing business at El Prado on a nightly basis.

Around May and June of 2007, the San Juan Metro Strike Force began an investigation into Alfalfa's operation. Based on this investigation, a federal grand jury indicted 121 defendants, including Lanza, charging him with conspiracy to possess with intent to distribute drugs (Count One), and aiding and abetting possession with intent to distribute heroin, crack cocaine, cocaine, and marijuana (Counts Two to Five). Lanza was tried jointly with two co-defendants; the remaining co-defendants plead guilty.

During trial, the government submitted physical evidence, the testimony of law enforcement officers and, as noted by the First Circuit, perhaps most importantly, the testimony of three co-conspirators: Wilberto Pizarro-Santiago ("Pizarro"), José Serrano-Ayuso, and José Díaz-Martínez ("Díaz"), who testified about Alfalfa's operation and defendants' roles in the drug trafficking organization. After an eighteen-day trial, a jury returned verdicts finding Lanza guilty on the conspiracy charge (Count I) and the substantive crack cocaine charge (Count III). **Crim. No. 07-547-22**, **ECF No. 5028**. Lanza was sentenced to two hundred and forty (240) months as to Counts One and Three, to be served concurrently with each other. *Id*.

Lanza and his co-defendants timely appealed arguing what the First Circuit described as a "laundry-list of claims ranging from minor evidentiary concerns to broad assertions of cumulative error." *Lanza*, 799 F.3d at 140. After finding that only five issues warranted in depth analysis and discussion, including Lanza's concerns respecting the trial judge's intervention during trial and objections to the jury charge., the First Circuit affirmed Lanza's and co-defendants' convictions and sentences. The Supreme Court denied *certiorari*. *Lanza-Vazquez v. United States*, 136 S. Ct. 2399 (2016). This petition then followed.

## II.     Legal Standard

The Court liberally construes *pro se* petitions, though "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted). This standard is "highly deferential" and courts "indulge a strong presumption that . . . under the circumstances,

the challenged action 'might be considered sound trial strategy.'" *Walker v. Medeiros*, 911 F.3d 629, 633 (1st Cir. 2018) (citing *Strickland*, 466 U.S. at 689).

The second prong requires that defendant "show that the deficient performance prejudiced the defense, which requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016). Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012). The petitioner bears a heavy burden of proof in this regard. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996).  However, "a reviewing court need not address both requirements if the evidence as to either is lacking." *Sleeper*, 510 F.3d at 39. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

**III.   Analysis**

Lanza moves to vacate his conviction and sentence exclusively on ineffective assistance of counsel grounds. He asserts that his trial counsel, attorney Héctor A. Deliz ("counsel Deliz")[1] failed to object to his family members allegedly being prevented from attending jury selection during his trial and failed to inform him about his right to testify at trial. *See* **ECF No. 1, 4**. Lanza further contends that his appellate counsel, Inga L. Parsons, rendered ineffective assistance by failing to raise an *Alleyne* violation on appeal. *Id.*

---

[1] The Court notes that counsel Deliz passed away in June, 2016.

> *A. Ineffective assistance of trial counsel*
>
> *1. Right to a public trial*

Lanza contends that on the first day of trial, during jury selection, a U.S. Marshal prevented his wife and mother from entering the courtroom, citing the Judge's interest in expediting jury selection and informing that this was a common practice in the courthouse and courtroom. **ECF No. 4** at 5-6. According to Lanza, he learned about this when he spoke to his wife and mother after returning to MDC upon conclusion of the proceedings that day. *Id.*[2] Lanza alleges that the next day he informed counsel Deliz about his family being denied access to the courtroom and asked counsel to bring this to the court's attention, but counsel failed to do so. *Id.*

The Sixth Amendment to the United States Constitution declares that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused. *See Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 508-510 (1984). The Supreme Court has recognized a public-trial violation as a type of structural error — one that affects the trial in its entirety. *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910-12 (2017), *United States v. González-López*, 548 U.S. 140, 149 (2006). Even so, "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet

---

[2] In support thereof, Lanza submits sworn statements by his wife and mother. **ECF Nos. 5, 6**.

the trial still will be fundamentally fair from the defendant's standpoint." *Weaver*, 137 S. Ct. at 1910.

In *Weaver*, the Supreme Court "clarified the proper standard within which to evaluate an ineffective-assistance claim premised on counsel's failure to object to a structural-type error." *Rodríguez-Rodríguez v. United States*, Civil No. 15-2082, 2018 U.S. Dist. LEXIS 46550, *12 (D.P.R. March 21, 2018) (citing *Weaver*, 137 S. Ct. at 1910-12). In so doing, the Court noted that "in the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" *Weaver*, 137 S. Ct. at 1910 (citing *Neder v. United States*, 527 U. S. 1, 7 (1999)).[3] However, a different "showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim." *Id*.[4] The petitioner must still satisfy *Strickland*'s two prongs. On this issue, the Supreme Court reasoned:

---

[3] Petitioner did not raise this issue on appeal nor argued it within the ineffective assistance of appellate counsel context. Consequently, this Court deems such argument waived and need not delve into this matter further.

[4] In applying "the different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead, in a claim alleging ineffective assistance of counsel", the Supreme Court explained that
> when a defendant objects to a courtroom closure, the trial court can either order the courtroom opened or explain the reasons for keeping it closed. When a defendant first raises the closure in an ineffective-assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure.
> Furthermore, when state or federal courts adjudicate errors objected to during trial and then raised on direct review, the systemic costs of remedying the error are diminished to some extent. That is because, if a new trial is ordered on direct review, there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost. There are also advantages of direct judicial supervision. Reviewing courts, in the regular course of the appellate process, can give instruction to the trial courts in a familiar context that allows for elaboration of the relevant principles based on review of an adequate record. For

the prejudice showing is in most cases a necessary part of a Strickland claim. The reason is that a defendant has a right to effective representation, not a right to an attorney who performs his duties "mistake-free." As a rule, therefore, a 'violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced.' *Weaver*, 137 S. Ct. at 1910 (citations omitted).

Thus, albeit ordinarily, the violation of the constitutional right to a public trial is a structural error, it does not automatically satisfy the *Strickland* prejudice prong. *Weaver*, 137 S. at 1911. Petitioner still bears the burden "to show either a reasonable probability of a different outcome in his or her case or…to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id*.

Considering the above, even assuming arguendo that petitioner's wife and mother were excluded from the courtroom during jury selection, this Court must still determine whether petitioner is entitled to habeas relief via his underlying ineffective assistance of counsel claim. At the outset, the Court notes that petitioner fails to provide developed argumentation regarding prejudice. His claim for relief simply relies on the allegation that his defense counsel did not bring the issue to the Court's attention. This is insufficient to show prejudice stemming from his counsel's alleged ineffective assistance as required by *Strickland*. Petitioner's shallow proffer does not even hint at, much less show, how his wife and mother's absence from the jury selection

---

instance, in this case, the factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays.
When an ineffective-assistance-of-counsel claim is raised in postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases. The finality interest is more at risk…
*Weaver*, 137 S. Ct. 1912.

rendered his trial fundamentally unfair, or that had they been present, there is a reasonable probability of a different outcome in his case.

Because petitioner is *pro se*, we construe his pleading more favorably than those drafted by an attorney. All the same, this does not excuse petitioner from complying with procedural and substantive law. It is well settled that issues raised in a perfunctory manner in a section 2255 claim, with no attempt or effort to develop argumentation, are deemed waived. *Rivera-Orta v. United States*, 243 F. Supp. 3d 202, 207 (D.P.R. 2017) (citing *Cody v. United States*, 249 F.3d 47, 53 n. 6 (1st Cir. 2001); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Absent a showing of prejudice, petitioner's ineffective assistance of counsel claim on this basis necessarily fails.

   2. *Right to testify*

Lanza proffers that had counsel Deliz informed him about his right to testify, he would have testified during trial and "offered testimony exculpating him from the crimes he was convicted for…" **ECF No. 4** at 10. It is well settled that a defendant has a "fundamental constitutional" right to testify in his own defense if he so wishes, and that right must be "unfettered," and "may not be waived by counsel acting alone." *Pabón-Mandrell v. United States*, 91 F. Supp. 3d 198, 212 (1st Cir. 2013) (citing *Owens v. United States*, 483 F.3d 48, 58 (1st Cir. 2007) (overruled in part by *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017)). "A claim that counsel interfered with that right implicates the right to effective assistance of counsel, that must be evaluated under Strickland's two-prong test." *Id*. The First Circuit noted that "when evaluating

Petitioner's claim under Strickland, the court shall inquire whether it is reasonably probable that the defendant's testimony would have changed the outcome of the trial in his favor." *Id*.

As the government points out, even assuming his proposition that counsel failed to advise him about his right to testify is true, Lanza must still prove prejudice. *See McKenzie v. United States*, 12-CV-3221, 2015 U.S. Dist. LEXIS 148558, *26-27 (E.D.N.Y. Nov. 2, 2015) (a petitioner who has been denied the right to testify must still establish that his failure to testify prejudiced his case); *Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir. 1996) ("a defense attorney renders ineffective assistance if he fails to adequately inform his client of the right to testify, and that failure prejudices the defense"). That is, Lanza must show that his testimony would have changed the outcome of the trial. Therefore, "[d]emonstrating that he would have testified is only half the battle." *Fisher v. United States*, 638 F. Supp. 2d 129, 141 (D. Mass. 2009).

Petitioner "must also show that his hypothetical testimony would have so altered the trajectory of his trial such that this Court can no longer be confident in the trial's outcome." *Id; see also United States v. Harris*, 613 F. Supp. 2d 1290, 1309 (S.D. Al. 2009) (holding that whether petitioner was prejudiced by his lawyer's alleged deficient performance concerning his right to testify hinges on what petitioner would have told the jury at trial and whether that testimony, when weighed against the other evidence before the jury, had a reasonable probability of making a difference in the outcome.) Lanza has not done so here.

Aside from a general and self-serving assertion regarding allegedly "exculpatory testimony", Lanza does not proffer what he would have told the jury or show how such

purportedly exculpatory testimony would have led to a different outcome at trial. Factual allegations of prejudice are "an essential component to a prima facie showing of his entitlement to habeas relief." *Palmer v. Hendricks*, 592 F.3d 386, 399 (3rd Cir. 2010). Lanza, however, does not develop any arguments or provide supporting facts. His "allegations concerning the prejudice resulting from counsel's supposedly inadequate representation are nothing more than 'conclusions without specific and detailed supporting facts.' In this situation, we need not treat them as true." *Vega-Encarnación v. United States*, 1993 U.S. App. LEXIS 10068, *12-13 (1st Cir. 1993); *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (in the civil pleading context, "courts are not bound to accept as true a legal conclusion couched as a factual allegation"). As such, there is no need to delve into an underdeveloped blanket assertion of ineffective assistance of counsel on these grounds. *See Rivera-Orta*, 243 F. Supp. 3d at 207 (citing *Cody*, 249 F.3d at 53 n. 6; *Zannino*, 895 F.2d at 17). The inquiry would ordinarily end here.

Nevertheless, it is important to note that in affirming his conviction, the First Circuit expressly addressed the ample evidence against petitioner. *See Morales-Rodríguez v. United States*, Civil No. 07-2131, 2010 U.S. Dist. LEXIS 92986, *19 (D.P.R. 2010) ("[c]onsidering the First Circuit's holding on appeal, and the overwhelming evidence against Petitioner, this Court fails to see how Petitioner was prejudiced by the errors he claims counsel committed"). Specifically, the testimony of co-conspirators Wilberto Pizarro-Colón, who testified extensively about the drug trafficking organization, Lanza's attendance to Alfalfa's inner circle meetings and role as an enforcer, and José Díaz-Martínez, who testified as to the drug trafficking organization and

explained how Lanza became owner of the "green-capped" crack at El Prado. *See Lanza-Vázquez*, 799 F.3d at 140. Indeed, the trial transcripts and record provide this Court with all that it needs to determine that there was overwhelming evidence against petitioner.[5]

If he had testified, petitioner would have subjected himself to cross-examination as to the evidence against him, including testimonial evidence regarding his direct involvement in the conspiracy, his attendance to Alfalfa's meetings, being the owner of the "green-capped" crack at El Prado and an enforcer within the criminal organization. *See United States v. Barron*, No. CR S-96-0190, 2006 U.S. Dist. LEXIS 82907, *43 (E.D. Ca. Nov. 14, 2006) (in assessing prejudice, the court weighed what petitioner would have testified to against what he did not intend to testify about, finding that the jury would have been unlikely to put much stock into what the court characterized would have been petitioner's self-serving denials). In *Concepción v. United States*, 181 F. Supp. 2d 206, 225-226 (E.D.N.Y. 2002), the court noted:

> [a]ny reasonably prudent criminal defense attorney would have advised Concepción that he could not limit his testimony to only certain matters. Once he

---

[5] *Franklin v. United States*, 227 Fed. Appx. 856, 860 (11th Cir. 2007) ("[t]he evidence of Franklin's guilt was overwhelming, with co-conspirator testimony directly implicating him in the crimes and independent corroborating evidence, including telephone records and taped telephone conversations in which Franklin and a co-defendant discussed the drug smuggling operation"); *Concepción v. United States*, 181 F. Supp. 2d 206, 226 (E.D.N.Y. 2002) (finding that even if counsel prevented petitioner from testifying, there was no prejudice since "[t]he evidence of [petitioner's] guilt that the Government placed before the jury, consisting of eyewitnesses, co-conspirators' testimony and damning exhibits was overwhelming."); *Halo v. U.S.*, No. 06-CV-5041, 2007 U.S. Dist. LEXIS 97135, 2007 WL 1299158, at *3 (E.D.N.Y. Apr. 30, 2007) (finding petitioner's failure to testify did not result in prejudice where three witnesses testified against petitioner); *McKenzie v. United States*, 12-CV-3221, 2015 U.S. Dist. LEXIS 148558, *31 (E.D.N.Y. Nov. 2, 2015) ("the government presented ample evidence of petitioner's guilt at trial, including recorded telephone conversations between petitioner and a cooperating witness and the testimony of law enforcement and cooperating witnesses regarding petitioner's knowledge of and involvement in the charged offenses"); *Ozsusamlar v. United States*, No. 05-CR-1077, 2012 U.S. Dist. LEXIS 141291, 2012 WL 4473286, at *2, 5 (S.D.N.Y. Sept. 28, 2012) (finding petitioner's failure to testify did not result in prejudice where the government had evidence from a cooperating witness and recorded telephone conversations).

>took the stand Concepción could be cross-examined on any relevant issue with regard to any charge in the indictment. That means that Concepción would have been questioned in detail and at length about his massive heroin and cocaine drug dealing organization; the millions of dollars collected; the shootings, beatings and torture of members and competitors; and the voluminous detailed records of the receipts and expenditures of the drug dealing with the names of participants boldly set forth. With reasonable certainty, Concepción's testimony would have been a veritable disaster to his defense and a field day for the prosecution.

Without question, petitioner's testimony would have done more harm than good. *Rega v. United States*, 263 F.3d 18, 22 (2nd Cir. 2001) (finding that counsel's failure to properly advise defendant of his right to testify did not prejudice defendant where court found that defendant's testimony would have done more harm than good).

Most importantly, petitioner's argument hinges on the credibility of his hypothetical testimony vis a vis the physical and testimonial evidence against him. Thus, his testimony would have been subject to a credibility determination and a weighing and balancing against the aggravating factors and evidence presented in the case. *See Hall v. Carpenter*, No. 05-1199, 2015 U.S. Dist. LEXIS 39948, *81 (W.D. Tn. Mar. 30, 2015). The Second Circuit denied an ineffective assistance claim based on trial counsel's alleged failure to advise defendant of his right to testify because the effect of the petitioner's testimony was "wholly dependent on either his credibility or on the incredibility of the witnesses against him." *Rega*, 263 F.3d at 22. In so holding, the Court highlighted that any probability of an acquittal must be based on an assessment "that the jury would have credited his testimony, notwithstanding the substantial evidence against him. *Id*. Since the government in *Rega* had presented ample evidence of

defendant's involvement in the charged offenses, if defendant had taken the stand, "the probability of a conviction would have increased because his testimony would have been severely undermined by impeachment evidence." *Id*. Petitioner suffers a similar fate here.

Accordingly, petitioner's claims of ineffective assistance of trial counsel are unavailing on all fronts.

   B. *Ineffective assistance of counsel on appeal*

Lanza contends that counsel Parsons was ineffective on appeal for failing to raise an *Alleyne* claim on appeal.[6] According to petitioner, his sentence was increased above the statutory minimum sentence based on facts that were not submitted to the jury and proved beyond a reasonable doubt, such as his role in the offense and amount of drugs attributable to him. **ECF No. 4** at 12. His reliance on *Alleyne*, however, is misplaced.

In *Alleyne*, the Supreme Court ruled that a defendant's Sixth Amendment right to a trial by jury requires that "facts that increase mandatory minimum sentences must be submitted to the jury." *United States v. Alleyne*, 133 S. Ct. 2151, 2163 (2013). The Court expressly noted that its ruling "does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id*. Accordingly, "factual findings made for purposes of

---

[6] The record shows that Lanza's appellate counsel filed a timely appeal with the First Circuit Court raising various arguments, including challenges to the judge's alleged improper conduct during trial, objections to the judge's charge to the jury, and alleging a violation to *Alleyne* based on the judge's expressions to the jury that the sentence imposed would be "within the sole discretion of the Court." *See* **Appeal No. 12-2412**, Lanza's Brief.

applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in Alleyne." *United States v. Ramírez-Negrón*, 751 F.3d 42, 48 (1st Cir. 2014). As the government correctly points out, Lanza's sentence was based only on the Court's consideration of the applicable Sentencing Guidelines. **ECF No. 5250**. The Court's factual findings were not used to subject Lanza to an increased statutory minimum, as prohibited by *Alleyne*.

Notably, the First Circuit disposed of allegations raised by one of petitioner's co-defendants under *Alleyne* as to purported improper enhancements at sentencing and drug quantity determinations that were not done by the jury as fact finders. Specifically, in *Lanza-Vázquez*, the First Circuit Court stated:

> The three defendants finally take aim at their sentences. Principally, they disagree with the district court's adoption of certain Guidelines enhancements. We find no errors, and single out only one point for discussion: Nieves' argument in his Federal Rule of Appellate Procedure 28(j) letter that the district court violated Alleyne in making certain drug-quantity findings.
>
> In establishing Nieves' base-offense level under the Guidelines, U.S.S.G. Sec. 2D1.1(c)(1), the district court adopted the jury's findings respecting the amount of drugs that Nieves was responsible for on count one, the broad conspiracy charge. This contributed to setting his base offense level at 34. Nieves argues that the district court committed an Alleyne error when it made this drug-quantity determination as it subjected him to an "enhanced sentence". He also seems to argue, although just barely, that the court utilized these findings to subject him to a statutory mandatory-minimum.
>
> …

In any event, we need not conclusively make that determination since, even assuming that Alleyne applies, no error occurred. Our decision in United States v. Acosta-Colon, 741 F.3d 179 (1st Cir. 2013), is instructive. In that case, the jury, like the one in this case, made individualized findings that each defendant conspired to possess and distribute a specific quantity of drugs. The judge then utilized that precise number to determine the quantity of drugs the defendant was responsible for. Id. at 192. We found no error because "the jury's individualized drug-quantity findings still [the defendant's] cry that no individualized findings drove this part of the judge's sentencing decision." Id.

As in Acosta-Colon, the district court here utilized a special verdict form requiring the jury to make certain drug-quantity findings. The form asked the jury, with respect to each drug type and each defendant, "Do you unanimously agree, by proof beyond reasonable doubt, that the quantity of substance containing a detectable amount of [drug] which the defendant conspired to possess with the intent to distribute was: [amount]." Since the jury did just that, the court acted appropriately in attributing that precise amount to Nieves. United States v. Lanza-Vazquez at 150. *Lanza-Vázquez*, 799 F.3d at 149-150.

A similar reasoning would have applied to Lanza had counsel raised the issue on appeal. Case law is clear; an attorney is not obliged to raise meritless claims and failure to do so does not render his or her legal assistance ineffective. *Alicea-Torres*, 455 F. Supp. 2d at 49 (citing *Acha v. United States*, 910 F.2d 28 (1st Cir.1990)). Thus, counsel cannot be deficient for failing to raise a meritless claim.

Consequently, petitioner's 2255 request for relief is **DENIED**.

IV.     **Petitioner is not entitled to a hearing**

An evidentiary hearing on a §2255 ineffective-assistance claim should be held only when the movant asserts facts that, if true, warrant habeas relief. *See Díaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). For petitioner to prosper in his request, he must be able to demonstrate to

the Court by a preponderance of the evidence, not only an entitlement to the 2255 petition for relief, but also entitlement to an evidentiary hearing. *David v. United States*, 134 F.3d 470, 477-478 (1st Cir. 1998); *Reyes v. United States*, 421 F.Supp. 2d 426, 430 (D.P.R. 2006).

Since petitioner failed in his burden as to his 2255 petition, he equally failed in the request for an evidentiary hearing. The Court need not hold an evidentiary hearing when the claims are undeveloped, unmeritorious, are unsupported conclusory allegations, or are contradicted by the record. *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). "A court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to habeas relief." *Palmer*, 592 F.3d at 393. Consequently, a hearing is unwarranted in this case.

## V.      Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. § 2255.  To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner made no such showing here. Thus, the Court will not issue him a certificate. Therefore, a COA is **DENIED**.

### VI. Conclusion

Considering the above, Lanza's petition for habeas relief, **ECF Nos. 1, 4**, is **DENIED** and the Court **DECLINES** to issue a certificate of appealability. The case is hereby **DISMISSED WITH PREJUDICE**. The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 25th day of November, 2020.

                                      **S/AIDA M. DELGADO-COLÓN**
                                      **United States District Judge**